FILED'11 JAN 31 10:33USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| WILLIAM J. WEYHRICH, ) | |
| ) | Civil No. 04-301-JO |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | OPINION AND ORDER |
| ROBERT O. LAMPERT, ) | |
| ) | |
| Respondent. ) | |

Michael R. Levine
Levine & McHenry LLC
1001 SW Fifth Avenue, Suite 1414
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Jonathan W. Diehl
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

    Attorneys for Respondent

///

1 - OPINION AND ORDER

JONES, District Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his state convictions for kidnapping, coercion and assault. For the reasons set forth below, the Second Amended Petition for Writ of Habeas Corpus (#44) is denied, and Judgment is entered dismissing this action with prejudice.

## BACKGROUND

On August 20, 1996, the Columbia County Grand Jury returned a second amended indictment charging petitioner with one count of Kidnapping in the First Degree, one count of Assault in the Second Degree, one count of Assault in the Third Degree, one count of Coercion and two counts of Assault in the Fourth Degree. Respondent's Exhibit 102. A jury convicted petitioner on one count of Kidnapping in the First Degree, one count of Assault in the Third Degree and one count of Coercion. It acquitted him on the remaining charges. The sentencing court found petitioner was a dangerous offender and sentenced him to an indeterminate 30-year sentence on the kidnapping charge to be served consecutively with a 60-month sentence on the assault charge and concurrently with a 36-month sentence on the coercion charge. Respondent's Exhibit 101.

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed the trial court without written opinion,

2 - OPINION AND ORDER

and the Oregon Supreme Court denied review. State v. Weyhrich, 155 Or. App. 488, 967 P.2d 530 (1998), rev. denied, 327 Or. 620, 971 P.2d 412 (1998); Respondent's Exhibits 103-107.

Petitioner filed for post-conviction relief ("PCR") in state court. The PCR trial court denied relief. Malheur County Circuit Court Case No. 990130280M. On appeal, the Oregon Court of Appeals affirmed the PCR court without written opinion, and the Oregon Supreme Court denied review. Weyhrich v. Lampert, 172 Or. App. 73, 19 P.3d 389 (2001), rev. denied, 333 Or. 398, 42 P.3d 1242 (2002); Respondent's Exhibits 118-123.

Petitioner filed a successive PCR petition in state court, but the court dismissed the petition with prejudice on the State's motion. Malheur County Circuit Court Case No. 0011692M. On appeal, the Oregon Court of Appeals affirmed the PCR court without written opinion, and the Oregon Supreme Court denied review. Weyhrich v. Lampert, 185 Or. App. 253, 60 P.3d 41 (2002), rev. denied, 335 Or. 255, 66 P.3d 1025 (2003); Respondent's Exhibits 128-132.

Petitioner filed an Amended Petition for Writ of Habeas Corpus in this court on March 2, 2004. However, on June 2, 2005, the court granted petitioner's unopposed motion to stay his federal habeas case pending the outcome of further state court proceedings.

Petitioner filed a second successive PCR petition in state court, but the court granted the State's motion for summary

3 - OPINION AND ORDER

judgment. Marion County Circuit Court Case No. 05C17951. On appeal, the Oregon Court of Appeals affirmed the PCR court without written opinion, and the Oregon Supreme Court denied review. <u>Weyhrich v. Belleque</u>, 214 Or. App. 699, 167 P.3d 1010 (2007), <u>rev. denied</u>, 343 Or. 467, 172 P.3d 2495 (2007); Respondent's Exhibits 139-142.

On July 25, 2008, the court lifted the stay on petitioner's federal habeas action. The claims set forth in petitioner's Second Amended Petition for Writ of Habeas Corpus are the following:

> Ground One: The trial court violated due process of law under the Fourteenth by sentencing petitioner to a substantial additional term of imprisonment as a "dangerous offender" under ORS 161.735, et. seq., in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v. Washington, 542 U.S. 296 (2004), and their progeny--because the determination must be made by a jury beyond a reasonable doubt.
>
> Ground Two: Trial counsel provided ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to object to tainted photographic evidence that was introduced at trial. The state improperly allowed third parties to enter the alleged crime scene, and these persons then rearranged many items at the scene including chairs and tables and a bloody towel. The photographs introduced in evidence depicted the rearranged scene, not the scene as it was at the time of the alleged crimes.
>
> Ground Three: Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to move for a mistrial on the grounds that the alleged crime scene and the police investigation of the crime had been so severely compromised by outsiders that all physical evidence was unreliable and inadmissible and that any subsequent trial violated due process of law.
>
> Ground Four: Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing

4 - OPINION AND ORDER

to argue to the jury that the crime scene had been severely compromised rendering the physical evidence unreliable.

Ground Five: Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to retain an independent psychologist, psychiatrist, or other witness to refute the state's claim that petitioner was a dangerous offender under Oregon law.

Ground Six: Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to move for a mistrial when the prosecutor in closing argument (at page 686 of the transcript) strongly implied to the jury that trial counsel was a liar and that the defendant had sought out trial counsel in order to have him concoct a lie to tell to the jury.

Ground Seven: Trial counsel rendered ineffective assistance of counsel under the Sixth and Fourteenth Amendments by failing to move for a mistrial when the prosecutor improperly commented on petitioner's having exercised his constitutional right to consult with an attorney after he was arrested by the police, implying to the jury that an innocent person would have never made such a request and that defendant did so only to concoct a lie to cover his guilt.

Ground Eight: The trial court violated due process of law under the Fourteenth Amendment when it found that defendant's conviction for assault III arose from a separate criminal episode than his conviction for kidnapping in the first degree when both convictions arose from the same criminal episode.

Ground Nine: Petitioner's counsel on direct appeal provided ineffective assistance of counsel under the Sixth, and Fourteenth Amendments by failing to raise on appeal the issue of the insufficiency of the evidence for the kidnapping charge.

Ground Ten: Petitioner's counsel on direct appeal provided ineffective assistance of counsel under the Sixth, and Fourteenth Amendments by failing to raise on appeal the failure of trial counsel to retain an independent psychologist or psychiatrist to refute the state's claim that petitioner was a dangerous offender under Oregon law.

Ground Eleven: Petitioner's conviction for Kidnapping in the First Degree was in violation of his due process rights under the fourteenth amendment of the United States Constitution in

that the evidence was insufficient, as a matter of law, to support the intent element of kidnapping. *See Oregon v. Wolleat*, 338 Or. 469 (2005)(en banc).

Respondent argues that petitioner is not entitled to relief because: (1) several of his grounds for relief are procedurally defaulted, and the default is not excused; (2) the remaining grounds for relief were denied on the merits in state court decisions entitled to deference; and (3) his claims are without merit.

## DISCUSSION

### I. Unargued Claims

Petitioner fails to brief the merits of Grounds One through Five and Grounds Eight through Eleven in his counseled supporting memorandum. Noting that he addresses only Grounds Six and Seven in his Supplemental Memorandum in Support, petitioner advises that he will "shortly submit a supplemental memorandum addressing Claim Eleven"[1] and that he "submits all other claims on the record before the Court." Supplement Memorandum (#63), p. 5. In its Responses (#18 & #48), the State contends that Grounds One, Eight and Eleven were never fairly presented to the Oregon Supreme Court, and thus, are procedurally defaulted, and that the PCR court's denial on the merits of the remaining claims is entitled to deference.

---

[1] Despite this representation, petitioner never filed a supplemental memorandum addressing Claim Eleven.

6 - OPINION AND ORDER

The court has independently reviewed the record as to petitioner's unbriefed claims and determined that they would not entitle him to relief. On habeas review, petitioner must show that the state court determination of his claims was contrary to or an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). By not advancing Grounds One through Five and Eight through Eleven in his memorandum, petitioner has failed to meet the burden of proof for habeas relief under § 2254(d). Accordingly, relief on these claims must be denied.

## II. Standard of Review

An application for writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

7 - OPINION AND ORDER

cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id. at 410. The state court's application of clearly established law must be objectively unreasonable. Id. at 409.

III. **Application**

> A. <u>Ineffective Assistance of Trial Counsel for Failing to Move for a Mistrial When the Prosecutor Implied Defense Counsel Was a Liar and that Petitioner had Sought Him Out and Retained Him to Concoct a Lie to Tell the Jury and When the Prosecutor Improperly Commented on Petitioner's Having Exercised His Constitutional Right to Consult with an Attorney by Implying an Innocent Person Would Not Have Done So (Grounds Six and Seven)</u>[2]

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's

---

[2] While petitioner presents Grounds Six and Seven as distinct claims in his Second Amended Petition, he argues them together in his memorandum and the PCR court addressed them together. The court finds they are related and will also consider them in conjunction with one another.

8 - OPINION AND ORDER

performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." Id at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. Id at 696.

The PCR trial court made the following pertinent findings related to these claims on the record:

> MR. CARLSON: Your Honor, you haven't addressed the closing argument on the part of the State where he accused my client of hiring a liar in order -- I guess in order -- the inference is in order to deceive the jury and of his intentional -- or seemingly intentional attempt to inform the jury that Mr. Weyhrich exercised his rights by asking for an attorney.
>
> THE COURT: I certainly understand why you could infer that in fact he was calling Defense Counsel a liar. He really did not say that directly. Defense Counsel objected as well. The objection was sustained and I think it would be very clear to the jury that in fact the prosecuting attorney was acting in a manner that was not appropriate. I think too that Defense Counsel as I recall in his affidavit addresses that and indicates that it was indeed a hard fought case and -- let's see what he says specifically. In essence, "This case was hard fought and the prosecutor, Dale Anderson, wanted to convict Mr. Weyhrich on all counts. My perception is the

9 - OPINION AND ORDER

jury viewed Mr. Anderson's antics as sour grapes and immature outbursts and/or simply a matter of getting caught in the moment and that it played no role in the decision making process." Again, the jury acquitted Mr. Weyhrich on several counts. So I think that the Defense Counsel made a proper call on that and so far as the fact that he did not move for a mistrial, which he clearly could have done, was not some sort of an error that would be a basis for granting relief requested in this post conviction relief proceeding. Does that address that particular aspect, at least as to what the Court's feeling is?

MR. CARLSON: Well, I don't believe that's the test for -- for the State's intentional -- drawing of intention to his request for an attorney.

THE COURT: Are you contending that the State didn't have the right to ask that particular question as to what his reaction was when the officer asked him what had happened?

MR. CARLSON: Yes. The State has no right to draw to the jury's attention the right that -- or the fact that my client exercised his constitutional right and asked for an attorney and to remain silent.

THE COURT: All right. What he asked for was an attorney. I don't think he asked to remain silent. Wasn't that the nature of the transcript? Are you saying then that there was error on the face of the record when in fact the evidence was elicited that when he was asked by the investigating officer what had happened that he said he wanted an attorney, is that -- cause one has to tie to the other.

MR. CARLSON: Yes. Well, I --it's -- it's both error on the face of the record I believe and it's also ineffective assistance of counsel for not asking for corrective instructions or -- or to have it stricken or for a mistrial.

THE COURT: Okay. Then in that particular I'm not finding as you are contending.

Respondent's Exhibit 116, pp. 31-33.

10 - OPINION AND ORDER

As set forth below, during closing arguments the prosecutor commented on petitioner's explanation to police for the victim's injuries and his request for an attorney. Petitioner's counsel objected and the trial court sustained the objection:

> MR. ANDERSON: I don't remember for sure but [the officer] called attention to the blood on the carpet. And the defendant's response was [the victim] fell on the stairs. Now, Officer Miller, his job was to stay with the [petitioner]. The other guys were checking the apartment. So he was with the [petitioner], he was close to the defendant, he was paying attention to the defendant.
>
> He was listening to the defendant, he was looking at the defendant, and he asked him a question. You know he just got it right because you know he wasn't crying, the defendant wasn't drugged, in the hospital. You know, take that situation and you know he got that right and that's the other reason why you ought to believe the [victim], because when given the opportunity to explain how all this happened the defendant had two responses.
>
> One, she fell on the stairs. Officer takes him out to the car, says tell me what really happened and his response is, "I want an attorney." Now, I've been an attorney for a long time.
>
> There's programs in this town at the high school where kids come down and follow you around for a day, talk about how you become an attorney and blah, blah. We do that or I do that. Other people in the courthouse could always tell the kids, you know, if I had to do it over again I wouldn't be an attorney, frankly.
>
> I wouldn't be an attorney. In my opinion, you know, they have those surveys that say who do you trust most and attorneys come out down there somewhere below used car salesmen or something like that, which is about right. Now, I want my attorney.
>
> When you want to build a house what do you get? You get yourself a professional carpenter. If you want to build a good house. If you want to build a good lie you don't get a chiropractor.

11 - OPINION AND ORDER

>     MR. CASTRO: I'm going to object to the insinuation, Your Honor.
>
>     THE COURT: I'll sustain the objection.

Transcript of Proceedings, Volume V, pp. 685-86.

The prosecutor's remarks were improper. Nevertheless, petitioner's Ground Six and Seven ineffective assistance of counsel claims are without merit. First, although trial counsel's affidavit does not specifically state that he made a tactical decision not to request a mistrial based on the prosecutor's inappropriate comments, one can reasonably assume that he was aware of the option, but reasonably determined it would not be in petitioner's best interests. It is not unreasonable to infer that counsel decided against such a motion because he believed that the jurors "viewed Mr. Anderson's antics as 'sour grapes,' 'an immature outburst,' and/or simply a matter of getting 'caught in the moment,'" and as a result, they might be less receptive to the prosecutor's arguments. See Strickland, 466 U.S. at 689 (tactical decisions of trial counsel are entitled to a high degree of deference). Indeed, as counsel notes in his affidavit, the jurors apparently questioned the State's case as they acquitted petitioner on three counts, including one Measure 11 count. Respondent's Exhibit 113, p. 3. Moreover, even assuming counsel's failure to move for mistrial fell outside the scope of reasonably effective assistance, the record does not establish by a reasonable probability that, but for counsel's alleged ineffective

12 - OPINION AND ORDER

performance, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

As noted above, the PCR court concluded that based on counsel's objection and the trial court's having sustained the objection that it would be "very clear" to the jury that the prosecutor's comments were inappropriate. In view of the fact that the prosecutor's comments were relatively brief, that he immediately moved onto another topic after the court sustained counsel's objection, that he did not repeat the remarks, and considering counsel's characterization of how he believes the comments impacted the jury, the PCR court's determination, even if debatable, is entitled to deference.

In addition, having reviewed the record, including petitioner's testimony, the court finds the case against petitioner was strong. The victim in this case sustained severe injuries when she jumped out of a second-floor bedroom window in her apartment. She testified that she jumped after petitioner had beaten her, barricaded the apartment's exit door with a table, forced her into a bedroom with threats that if she tried to leave he would beat her further, and promised to kill her before the weekend was over.

At trial, petitioner took the stand in his own defense. He maintained that the victim, upset by his announcement that he was leaving her, attacked him, forcefully and repeatedly hit herself with a phone, and pushed a table over near the exit door in an

13 - OPINION AND ORDER

attempt to block *him* from leaving. Petitioner's counsel in his closing arguments suggested that the victim might have jumped out the window to garner attention or to keep petitioner from leaving her, but speculated that when she realized how injured she was she became angry and made up the story of abuse. As defense counsel later averred during the PCR proceedings, from the beginning he felt this version of events "was a 'tough' sell to the jury, since most people would not jump 15 feet out of a window if they could walk out the front door and walk down the stairs." Respondent's Exhibit 113, p. 4. The court agrees and based on its careful review of the record finds petitioner's theory, casting the victim as a self-destructive aggressor, incredible.

To the extent petitioner also faults trial counsel with failing to object to or move for a mistrial based on the prosecutor eliciting testimony from Officer Miller that when he asked petitioner what really happened, petitioner responded that he needed to talk to a lawyer, the PCR court specifically determined counsel's performance was not deficient in that regard. Notably, Officer Miller's testimony came in rebuttal to petitioner's contradictory testimony that when Officer Miller asked him what really happened, petitioner responded "Why? I mean -- You're putting me under arrest, you should have asked me up there. Now anything I tell you you're going to hold it against me or put a different story to it." Transcript of Proceeding, Volume V, p.

14 - OPINION AND ORDER

555. Accordingly, taken in context, petitioner cannot show either that the prosecutor introduced Officer Miller's testimony to improperly link petitioner's exercise of his right to counsel with an admission of guilt or that the jury would have inferred as much.

Based on the foregoing, petitioner cannot demonstrate that the PCR court's denial of the ineffective assistance of counsel claims set forth in Grounds Six and Seven of the Second Amended Petition was contrary to, or an unreasonable application of, clearly established federal law as defined by the Supreme Court.

## C. Evidentiary Hearing

Petitioner contends that in the event the court does not grant the Petition on the existing record, it should conduct an evidentiary hearing "at which testimony from trial counsel should be taken to more fully develop the record." Supplemental Memorandum (#63), p. 27.

Petitioner is not entitled to an evidentiary hearing in this federal court to further develop the merits of his claim unless he diligently attempted to develop the evidence in state court, but was unable to do so. Williams v. Taylor, 529 U.S. 420, 433-38 (2000). If petitioner failed to diligently develop the evidence, an evidentiary hearing is permitted only if petitioner's claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not

have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(I) and (ii). In addition, the facts underlying the claim must be sufficient to establish by clear and convincing evidence, that no reasonable fact finder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

Petitioner's request for an evidentiary hearing is denied. He makes no offer of proof as to the evidence he would seek to present in an evidentiary hearing or the reasons why he did not present such evidence during his state court proceedings.

## CONCLUSION

For the foregoing reasons, the Second Amended Petition for Writ of Habeas Corpus (#44) is DENIED, and this case is DISMISSED, with prejudice. In addition, the court finds that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). Accordingly, this case is not appropriate for appellate review.

IT IS SO ORDERED.

DATED this 31st day of January, 2011.

_____
Robert E. Jones
United States District Judge